UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ONE BLACK APPLE IPHONE IN THE POSSESSION OF UNITED STATES BORDER PATROL IN RICHFORD, VERMONT | Case No. 2:24-mj-57 |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Nathaniel J. Arnold, being duly sworn, state as follows:

**Introduction and Agent Background**

1. I am a Border Patrol Agent (BPA) of the United States Border Patrol (USBP), a component of Customs and Border Protection (CBP) within the Department of Homeland Security (DHS). I have been so employed since August 11, 2008. I have been assigned to the Richford, Vermont Station as a BPA for approximately 6 years and currently serve as the station's Prosecutions Agent. I was previously assigned to the Yuma, Arizona Border Patrol Station as a BPA for approximately 10 years.

2. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of one electronic device — further described below and in Attachment A — that is currently in the possession of the USBP and the seizure from this device of the electronically stored information described in Attachment B. This warrant application arises from the United States Border Patrol's contact with Mitsraim Dorisma ("DORISMA"), a citizen of Haiti on May 4, 2024 in the District of Vermont. As a result of this contact, a federal investigation commenced concerning DORISMA's

1

involvement with aiding and abetting the transportation of aliens in furtherance of their illegal entry in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and 8 U.S.C. § 1324(a)(1)(A)(v)(II). The matter is currently pending additional proceedings.

3. The device to be searched includes a black Apple iPhone device (hereinafter the "DORISMA DEVICE") seized from the person of DORISMA on May 4, 2024. The DORISMA DEVICE is currently in evidence storage at the Richford Border Patrol Station, which is located at 1668 St. Albans Road in Richford, Vermont.

4. Based on my training and experience, the DORISMA DEVICE has been stored in a manner such that the data on it will have remained intact and in the same condition as it was at the time of the DORISMA DEVICE's seizure. The applied-for warrant would authorize the forensic examination of the DORISMA DEVICE's for the purpose of seizing electronically stored data, particularly described in Attachment B, that would evidence the aforementioned federal offenses of human smuggling and illegal entry that the user of the DORISMA DEVICE engaged in or aided and abetted.

5. In my experience investigating many human-smuggling cases, I have found that electronic devices such as cellular phones are commonly used to facilitate smuggling events in multiple ways. For example, participants use cellular phones to coordinate transportation in advance of the event and to guide migrants during the event across the border and to the waiting vehicle. In addition, smugglers utilize cellular phones to discuss and receive proof of payment from those being smuggled. These communications may include messages received by or sent from the devices, identification numbers and other information contained in their electronic memories, and the records of telephone numbers to which calls were placed and from which calls were received. The device may also contain GPS or similar location information indicating

where the devices have traveled as well as photographs or videos. Further, individuals who commit these types of crimes together or who know about crimes committed by their close associates, may communicate about those crimes through electronic communications that would be stored on a cellular telephone. The communications would be similar to those previously noted. Further information stored in the memories of these communication devices could constitute evidence of criminal activity. The device may also contain GPS or similar location information indicating where the devices have traveled. With their cellular phones, those involved in illegal transportation activity often take photographs or videos of their illegal activities including maps, associates, and locations associated with their illegal activity. These photographs or videos may be stored in the memory of those cellular phones. Moreover, coordinators often track the migrants' and drivers' positions in real time during a smuggling event, and they exchange verbal and/or non-verbal communications over Wi-Fi and/or cellular networks to help them locate one another. These tasks are frequently necessary in the Swanton Sector generally, and the Richford Station Area of Responsibility (AOR) specifically, because the remote and rural nature of the AOR makes it difficult to arrange meetings at precise times and to navigate to locations unlikely to appear on printed maps.

6. The information contained within this affidavit is based upon my training and experience, my own investigative efforts, and investigation by other law enforcement officers with whom I have spoken or whose reports I have reviewed. The following is either known to me personally or has been related to me by persons having direct knowledge of the events described below. The information in this affidavit is meant to set forth probable cause to believe that the violations occurred and that evidence of them will be found on the DORISMA DEVICE; it does not necessarily include every fact known to law enforcement about the events described

below. Unless otherwise specified, the statements described in the following paragraphs are related in sum and substance and are not meant to be direct quotations or complete descriptions.

## Probable Cause

7. On May 4, 2024, at approximately 1:40 A.M., Swanton Sector Dispatch received images showing at least four subjects, including a child, walking south from the international border near North Road, Berkshire, Vermont. The images were taken from a camera set up by Border Patrol Agents in an area previously used by people to illegally enter into the United States.

8. BPA Stephen Holbrook responded to the area in an unmarked service vehicle. At approximately 2:10 A.M., BPA Holbrook arrived on North Road and parked his vehicle near the intersection of Hammond Road. This area of North Road has open fields for farming and provides a view to the North in the direction where the four subjects were detected on Camera. About 0.4 miles north of Hammond Road is the intersection of Ayers Hill Road. With the assistance of night vision equipment, BPA Holbrook observed a vehicle parked near the intersection of North Road and Ayers Hill Road. While looking through the night vision equipment, BPA Holbrook observed what appeared to be several subjects entering the vehicle. The vehicle then began to travel south on North Road towards BPA Holbrook's location near Hammond Road.

9. North Road is a remote, dead end dirt road that terminates in close proximity to the international border between the United States and Canada. North Road intersects with Skunk Hollow Road, which continues Northwest towards the international Border, and Ayers Hill Road, which parallels the international border to the east. Hammond Road is a dead-end residential road between Skunk Hollow Road and Ayers Hill Road. All the roads listed above are

remote, dirt roads consisting mainly of residences and some farms. There is typically no vehicular traffic travelling on these roads between the hours of midnight and 4:00 A.M., a trend known by BPA Holbrook. Below is a map of this area of North Road described above.



10.     BPA Holbrook was parked in a manner where he could observe the vehicle as it passed his location. When the vehicle traveled past his location, BPA Holbrook could see into the vehicle and see its passengers. BPA Holbrook noticed multiple people in the vehicle, including a child on a person's lap and what appeared to be a subject attempting to conceal himself in the back seat. During alien smuggling events, it is common to see child sitting on an adult's lap rather than in their own seat or booster seat. This is because those being smuggled are attempting to enter the car as fast as they can to immediately leave the area.

5

11. BPA Holbrook pulled out behind the vehicle and observed New Jersey temporary (paper) license plate 879652T. Due to the remoteness of the location, the vehicle being registered out of state, BPA Holbrook watching as people got into the vehicle, and a child being on camera and in the vehicle, among other facts, BPA Holbrook activated his emergency lights and initiated a vehicle stop.

12. The vehicle yielded and then BPA Holbrook approached the driver's side of the vehicle and identified himself as a Border Patrol Agent. BPA Holbrook asked the driver, identified as Mitsraim DORISMA, for identification. DORISMA presented an Employment Authorization Document (EAD) to BPA Holbrook. EAD cards are documents issued by US Citizen and Immigration Services to grant work authorization to subjects who are not US Citizens who are inside the United States.

13. BPA Holbrook questioned the other three adult subjects in the car as to their citizenship. The subjects all stated they were Haitian citizens and admitted having illegally entered the United States. All subjects were searched for weapons and other contraband. During the search, DORISMA had the DORISMA DEVICE in his right front pants pocket. All subjects were transported to the Richford Border Patrol Station for further processing.

14. At the Richford Border Patrol Station, agents took the fingerprints and biographic information of the adult Haitian citizens and entered them into the E3 Nextgen fingerprint database. This database returned no match for the subjects having any valid admission documents or for applications to enter the United States.

15. DORISMA's fingerprints and biographic information were also entered into the E3 Nextgen fingerprint database. Previous immigration history reveals DORISMA illegally

entered the United States near Brackettville, Texas on or about June 28, 2019. DORISMA was granted a Notice to Appear and is currently undergoing immigration proceedings.

16. Record checks on the vehicle DORISMA was driving confirmed DORISMA as the registered owner of the vehicle, a 2016 black Jeep Cherokee with temporary license plate 879652T. License Plate Readers (LPRs) indicate that in addition to the above detailed event, the vehicle appears to have traveled to the border on the nights of April 26 and April 30, 2024. On these dates the vehicle traveled north from New Jersey onto Interstate I-87 near Portersville, New York. It then returned to New Jersey with very little time to visit or remain in the area.

17. From my experience with alien smugglers that travel long distances to pick up migrants, they arrive in the area and stage at locations within a reasonable distance of the pick-up locations. Alien smugglers would then wait for the migrants to cross the border and then arrive at the designated pick-up location.

**Information Regarding Electronic Storage and Forensic Analysis**

18. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

19. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the DORISMA DEVICE was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the DORISMA DEVICE because:

7

  a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

  b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

  c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

  d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

  e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

20. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the DORISMA DEVICE consistent with the warrant. The examination may require authorities to employ

techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

## Conclusion and Request

21. Based on the foregoing, I submit there is probable cause to believe that from at least April 26, 2024, through the time of his arrest on May 4, 2024, Mitsraim Dorisma (DORISMA) transported aliens in furtherance of their illegal entry while knowing or recklessly disregarding the fact that they were aliens who had illegally entered the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and 8 U.S.C. § 1324(a)(1)(A)(v)(II). Further, there is probable cause to believe that evidence of these violations will be located inside the DORISMA DEVICE. I respectfully request the issuance of a search warrant authorizing the examination of the DORISMA DEVICE, further described in Attachment A, and the seizure therefrom of the data described in Attachment B.

22. Because this warrant seeks only permission to examine the DORISMA DEVICE, which is already in law enforcement's possession, the execution of this warrant would not involve the physical intrusion onto premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

Dated at Burlington, in the District of Vermont, this _____ day of May, 2024.

_____
NATHANIEL J. ARNOLD
Border Patrol Agent
U.S. Border Patrol

Attested and sworn to before me by reliable electronic means on this /0 th day of May, 2024.

_____
HON. KEVIN J. DOYLE
United States Magistrate Judge
United States District Court
District of Vermont